### PEOPLE *v.* McBRIDE.

1. CRIMINAL LAW—EMBEZZLEMENT—DECLARATIONS OF COPARTNER —RES GESTÆ.

   Upon the prosecution of a member of a law firm for the embezzlement of the proceeds of a mortgage placed with him for collection, statements made by his copartner some 15 months after the collection is claimed to have been made, that the mortgage was still unpaid and in process of foreclosure, are not admissible as part of the *res gestæ.*

2. SAME—AGENCY.

   Nor are such statements admissible against respondent on the ground of agency.

3. SAME—DRAFTS—PAYMENT—EVIDENCE.

   In a prosecution for the embezzlement of the proceeds of a draft intended to be made payable to the order of respondent in payment of a mortgage which he held for collection, but, by mistake, drawn to the order of another, the draft, indorsed by respondent, is admissible to show respondent's receipt of the funds, in connection with proof that the drawee was apprised by the drawer of his mistake, and directed to pay the draft to respondent, and that such payment was in fact made.

Exceptions before judgment from superior court of Grand Rapids; Burlingame, J.   Submitted February 10, 1899.   Decided May 9, 1899.

James E. McBride was convicted of embezzlement. Reversed.

This is exceptions before sentence to review proceedings in which respondent was convicted of embezzlement.   The testimony on the part of the people tended to show that in August, 1895, the respondent and his son, Edward G. McBride, were copartners engaged in the practice of law at Grand Rapids; that one Frank Lewis during that month left with respondent a note and mortgage made by one Lyons, of Holland, Mich., for collection; that from time to time he made inquiries about the progress which was being made, and various reasons were assigned by Edward G. McBride why the money had not been received, until in July, 1897, he learned that the money on the mortgage had been paid in January, 1896, and the mortgage discharged; and that the discharge of the mortgage was not executed by him.   The people called John A. Seymour, cashier of the Fourth National Bank of Grand Rapids, who testified that on the 22d of January, 1896, he paid to respondent a draft drawn on his bank by the cashier of the Holland City Bank, payable to the order of the Fuller & Fuller Company, and indorsed by McBride & McBride; that before paying the draft he called up the Holland City Bank for instructions to pay this sum to McBride & McBride.   The cashier of the Holland City Bank was called, and testified that he drew the draft in question in payment of the money received on collection of the said note and mortgage received from McBride & McBride for collection, and by mistake made it payable to the Fuller & Fuller Company (having just previously drawn a draft in this name), and on the 22d of January, when Mr. Seymour called him up, he instructed him to pay the draft to McBride & McBride.   The prosecution also showed a demand

and refusal to pay it over to the complaining witness. The respondent denied having received the money on the draft, and showed that the indorsement of the firm name of McBride & McBride was not in the handwriting of either member of the firm, and gave evidence tending to show that the discharge was signed by the complaining witness. Respondent also gave testimony tending to show that on the 22d of January, 1896, he was not able to be at the Fourth National Bank, as he was confined to his house by illness.

*David E. Burns* (*John O. Zabel*, of counsel), for appellant.

*Horace M. Oren*, Attorney General, and *Frank A. Rodgers*, Prosecuting Attorney, for the people.

GRANT, C. J. (*after stating the facts*). The first four assignments of error relate to the admission of statements of Edward G. McBride relative to the progress of the collection, made from time to time, and the fifth relates to the admission in evidence of a statement by him that the firm had received a draft, which, on due inspection, they found did not belong to them. The ruling on the last question was not excepted to, but the court, on making an earlier ruling, stated that all testimony of the statements of Edward G. McBride was taken subject to exception. The character of the testimony admitted against the objections and exceptions noted under the first four assignments may be illustrated by a question put to Albert Lewis, and the answer. The question was:

"You may state what Ed. said to you in regard to this note and mortgage."

The witness answered:

"I went there several different times  *  *  *  to see him about other matters; and incidentally he would talk about the Lyons mortgage. He said it was being foreclosed; and one time he said a copy of the notice of foreclosure was being prepared by the printer, and would

soon be through his hands, and we could have a copy of the paper. I asked him what paper it was being printed in, and he said he didn't remember, but he would ascertain, and send us a copy. I think that was in April, 1897; can't say definitely."

As the evidence showed that the mortgage had been discharged and delivered up to Lyons in 1896, it is apparent that this statement, if made by respondent, would be very damaging, as it is an attempt to temporize by an untruth. The very fact that this testimony was important suggests the necessity of care in determining its admissibility. It was mere hearsay, unless it be held that it was a part of the *res gestæ*, or that respondent's partner was so far his agent as to bind him by an admission, or, rather, to reflect upon him an untruthful equivocation. It was clearly not a part of the *res gestæ*.

"The declarations of third persons are not admissible in evidence as part of the *res gestæ*, unless they in some way elucidate, or tend to give a character to, the act which they accompany, or may derive a degree of credit from the fact itself." 1 Rosc. Cr. Ev. (8th Ed.) 41, note.

See, also, *People* v. *Mead*, 50 Mich. 228.

The case of *Simpson* v. *Waldby*, 63 Mich. 439, cited by the counsel for the people, is clearly distinguishable from this. In that case it was held that the statement of a clerk in a bank as to whether a draft had been paid was admissible. This was on the ground that the statement was made in the course of his agency, and constituted a part of the *res gestæ*. It was a civil case, and the statement was one of fact, by one of whom the witness was, by the course of dealing, expected to inquire. This statement, under these circumstances, would bind the firm, for the reason that he spoke for the firm. So, in the case of a partnership, each partner speaks for the firm, and binds all as to its civil obligations. This is on the ground that each partner is agent for all partnership business. It is quite another question, however, whether a copartner may make an admission which will bind his copartner in a criminal proceeding; and it is still a greater stretch of

the authority of an agent to say that he may, by an untruthful account of what has gone on in the business of his principal, subject that principal to punishment as for a crime. See *Lambert* v. *People*, 6 Abb. N. C. 181. Wharton states the rule as follows:

"When the relation of principal and agent in a particular transaction is established, the agent's admissions may be imputed to. the principal, if his agency involves the making of such admissions." Whart. Cr. Ev. § 695.

The illustrations given by the author consist of cases in which the statement of the agent was a part of the *res gestœ*.

In 1 Rosc. Cr. Ev. (8th Ed.) 85, it is said:

"An admission by an agent is never evidence in criminal, as it is sometimes in civil, cases, in the sense in which an admission by a party himself is evidence. An admission by the party himself is in all cases the best evidence which can be produced, and supersedes the necessity of all further proof; and in civil cases the rule is carried still further, for the admission of an agent, made in the course of his employment, and in accordance with his duty, is as binding upon the principal as an admission made by himself. But this has never been extended to criminal cases."

We think this testimony inadmissible under either of the rules stated. The statements of Edward G. McBride were made 15 months after the commission of the alleged offense. The statement is not claimed to be a matter of fact, but quite the contrary,— an untruthful account of the state of the business, from which the jury would naturally infer an attempt to cover up an offense.

It is next contended that it was error to permit the draft drawn by the Holland City Bank, payable to the order of the Fuller & Fuller Company, to be admitted. It is said that the draft was either the property of the Fuller & Fuller Company, or was a nullity; that is, it was dead paper in the hands of McBride & McBride. We think none of these objections are tenable. The testimony of the prosecution tended to show that this draft was in fact sent to McBride

& McBride in payment for the Lyons mortgage, that by mistake it was made in the name of the Fuller & Fuller Company, that it was in fact presented for payment by respondent, and that its payment to him was authorized by the drawer, and that the amount of the draft was in fact paid to him. If the jury believed this testimony, it would show, beyond cavil, that the respondent received this money as the proceeds of this collection, and as the attorney of Lewis. It was entirely competent to trace the money into respondent's hands by the method pursued. The same considerations answer the respondent's contention that the court should have directed an acquittal. The case was a proper one for the jury.

None of the other questions require discussion, as they are not likely to arise on a new trial.

For the errors pointed out, the conviction will be set aside, and a new trial ordered.

MONTGOMERY, HOOKER, and LONG, JJ., concurred. MOORE, J., did not sit