PEOPLE v COX

1. CRIMINAL LAW—INSTRUCTIONS TO JURY—EVIDENCE—ADMISSIBILITY
    —WITNESSES—IMPEACHMENT—PRIOR INCONSISTENT TESTIMONY
    —LIMITING INSTRUCTIONS—PREJUDICE.
    Failure to give a jury instruction *sua sponte* that prior inconsist-
    ent testimony was admitted solely for impeachment purposes is
    not reversible error where there is no request for a limiting
    instruction, there is no demonstration or likelihood of preju-
    dice, and neither the court nor the prosecutor had suggested to
    the jury that the prior inconsistent statement could be used as
    substantive evidence.

2. CRIMINAL LAW—EVIDENCE—INSTRUCTIONS TO JURY—WITNESSES—
    IMPEACHMENT—SUBSTANTIVE EVIDENCE—APPEAL AND ERROR—
    REASONABLE DOUBT.
    Even in the absence of a request from counsel, it was reversible
    error for a court not to caution the jury that the preliminary
    examination testimony of a witness which was used for im-
    peachment purposes at trial could not be used as substantive
    evidence, where it was evident that the jury was confused,
    where the testimony of the witness was crucial and the prelimi-
    nary examination testimony, taken as substantive evidence
    could have significantly damaged defendant's case, and where
    the Court of Appeals cannot find beyond a reasonable doubt
    that the jury did not use the preliminary examination testi-
    mony as substantive evidence.

Appeal from Recorder's Court of Detroit, Elza H.
Papp, J. Submitted Division 1 April 15, 1975, at
Detroit. (Docket No. 17314.) Decided May 27, 1975.

REFERENCES FOR POINTS IN HEADNOTES
[1] 75 Am Jur 2d, Trial §§ 644, 860, 864, 865.
    Statements, comments, or conduct of court or counsel regarding
        perjury, as ground for new trial or reversal in civil action or
        criminal prosecution other than perjury. 127 ALR 1385.
    Scope and application of rule which permits judge in criminal case
        to comment on weight or significance of evidence. 113 ALR 1308.
[2] 29 Am Jur 2d, Evidence § 739.

John Cox was convicted of assault with intent to do great bodily harm less than murder. Defendant appeals. Reversed and remanded.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William S. Cahalan,* Prosecuting Attorney, *Patricia J. Boyle,* Principal Attorney, Research, Training and Appeals, and *Luvenia D. Dockett,* Assistant Prosecuting Attorney, for the people.

*Bernard Adams, Jr.,* for defendant on appeal.

Before: ALLEN, P. J., and BRONSON and N. J. KAUFMAN, JJ.

N. J. KAUFMAN, J. On November 30, 1972, defendant was found guilty by a Detroit Recorder's Court jury of assault with intent to do great bodily harm less than the crime of murder, MCLA 750.84; MSA 28.279. He was sentenced to a term of 4-1/2 to 10 years and appeals by right.

Defendant was charged with having aided his codefendant, Jessie Ledbetter, in scalding the complainant, Sheila Sanders, by forcing her into a tub of hot water. Prior to trial, Ledbetter pled to a reduced charge. The complainant was living with one Phillip Herbert, an admitted seller of narcotics. Herbert had sold drugs to Ledbetter who gave Herbert his gun as payment. Defendant had gone with Ledbetter to Herbert's motel room where Ledbetter was going to pay Herbert for the drugs and redeem his gun. The complainant was staying with Herbert at the time defendant and Ledbetter arrived. When Herbert refused to return the gun, Ledbetter accosted him.

At this point, the testimony becomes contradic-

tory. Herbert testified that, on Ledbetter's orders, defendant filled the bathtub with hot water and that Ledbetter forced Herbert and Ms. Sanders into it. Herbert claimed that he then jumped out of the tub and attacked Ledbetter. He testified that defendant "seemed like he had his hands on [Sheila Sanders'] shoulders", but that "[h]e could have been picking her up", not holding her down, as the prosecution claimed.

Ledbetter testified that defendant attempted to stop him from beating Herbert and that defendant helped Sheila Sanders out of the tub after she had "accidentally" fallen in during the scuffle. Defendant claimed that he was in another room and had gone into the bathroom to see what was happening and had helped the complainant out of the tub after unsuccessfully trying to stop the fight.

At trial, Sheila Sanders, the complainant, testified that she had walked into the bathroom and found Herbert and Ledbetter fighting. She stated that defendant was also in the bathroom. During the fight she was pushed into the tub but could not identify the individual who had pushed her. Attempting to impeach Ms. Sanders, the prosecution read into evidence her preliminary examination testimony in which she had stated that defendant had prevented her from getting out of the tub. Ms. Sanders admitted having made the preliminary examination testimony but claimed that she had lied.

This instruction of the preliminary exam testimony forms the basis of defendant's first claim on appeal. Although he did not make a request for a limiting instruction at trial, defendant now claims that it was reversible error for the court not to caution the jury that the preliminary exam testimony was used for impeachment purposes, not as

substantive evidence. No limiting instruction was given, *sua sponte,* by the court.

In such a case, this Court has held that:

"Where, * * * there is no request for a limiting instruction, *where there is no demonstration or likelihood of prejudice* and where neither the court nor the prosecutor has suggested to the jury that the prior inconsistent statement could be used as substantive evidence, the trial judge's omission does not require a reversal." (Emphasis supplied.) *People v Mathis,* 55 Mich App 694, 697; 223 NW2d 310 (1974).

Such prejudice is rarely shown. Here, however, we find explicit evidence on the record that the jury was confused as to how the preliminary exam testimony was used. We find a distinct showing that the jury focused on this evidence.

During the course of the jury's deliberations, a note from the foreman was handed to the trial judge with the following inquiry:

"Your Honor, some members of the jury would like to know if the testimony of Sheila Sanders in the pretrial transcript was testimony taken while she was under oath."

The trial judge did not answer the question but, rather, stated:

"I cannot tell you one way or the other or comment, ladies and gentlemen of the jury, because you heard the testimony. You heard how that testimony was brought in.

"Now, there may be one or two or three of you that can't remember everything that you heard. That is the reason why we have a jury of twelve of you. But collectively you ought to be able to remember whether that testimony was taken under oath or not.

"In other words, one of you or two or three of you may not remember something about a particular fact, but the other may, and you are to discuss it and that way you refresh the memories of other jurors. Collect-

ively, all twelve of you can arrive as to whether any piece of evidence not only this was given or not given.

"I am sorry I can't comment on evidence. You will have to go back and try to remember what had occurred."

The trial court's response did nothing to alleviate the jury's confusion. Again, however, defense counsel failed to object. Under GCR 1963, 516.4, objections to additional instructions after the jury has begun its deliberations must be "made in a motion for a new trial". Defense counsel failed to make such a motion.

Notwithstanding these failures by defense counsel—indeed, in spite of them—we find the possibility of prejudice to defendant himself to be so apparent and significant that we are constrained to reverse. We cannot, as is required, find these errors harmless beyond a reasonable doubt. *People v Roberson,* 55 Mich App 413; 222 NW2d 761 (1974). The errors here have an "inherent tendency to undermine the reliability and detract from the integrity of the guilt determination process". *Id.,* at p 420. The complainant's testimony was crucial. Testimony of the other witnesses was contradictory and could, in the absence of the disputed testimony, have conceivably created a reasonable doubt in the mind of the jurors.

The complainant's preliminary examination testimony, taken as substantive evidence, could most surely have significantly damaged defendant's case. We cannot find beyond a reasonable doubt that the jury did not use the preliminary examination testimony as substantive evidence. Nor can we say beyond a reasonable doubt that, used substantively, this evidence did not significantly affect the jury's fact-finding.

In view of our disposition of this case, we do not consider defendant's other claims of error.

Reversed and remanded for a new trial.