PEOPLE v ADAMS

Docket No. 78-874. Submitted May 8, 1979, at Lansing.—Decided October 1, 1979. Leave to appeal applied for.

Joe L. Adams was convicted of armed robbery and assault with intent to commit murder. Philip Benn, owner of Benn's Sweeper Shop, was stabbed four times during a robbery at his shop. On the day after the robbery and assault, Philip Benn, while in the intensive care unit of a local hospital, was shown a series of photographs by the police and picked out Joe L. Adams as a subject who looked like the man who robbed and attacked him. On the day of trial, but not prior thereto, defense counsel requested and was granted a hearing to examine the nature of the photographic showup. After testimony by a police detective and Benn, defendant moved to suppress any testi- mony of Benn which would go toward identifying him on the ground that the failure to preserve the photo display which the police had shown Benn tainted any subsequent identification at trial. At the court's suggestion Benn and his wife testified for purposes of the motion. Thereafter, Jackson Circuit Court, Russell E. Noble, J., ruled the photo identification procedures which took place while Benn was in the intensive care unit of the hospital were not improper. On appeal, in addition to the photo identification issue, defendant contends that the officer's testimony concerning the complaining witness's identification was hearsay and should have been excluded by the trial judge, that the court erred in failing to repeat, *sua sponte,* a limiting instruction on the use of impeachment evidence when claimed impeachment testimony was read back to the jury during their deliberations and that the court's jury instructions were mis- leading. *Held:*

1. Pretrial eyewitness photographic identification will not be set aside at trial unless the identification procedure was so

REFERENCES FOR POINTS IN HEADNOTES

[1] 29 Am Jur 2d, Evidence § 371.
[2, 3] 5 Am Jur 2d, Appeal and Error § 797 *et seq.*
[4] 5 Am Jur 2d, Appeal and Error § 623.
[5] 5 Am Jur 2d, Appeal and Error §§ 776, 815.
[6] 5 Am Jur 2d, Appeal and Error § 776 *et seq.*

impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification. The procedure involved in the photographic identification session between the police and Benn was not impermissibly suggestive, unfair, biased or in violation of the defendant's constitutional rights.

2. It would have been better procedure to preserve the photographs shown to Benn; however, this is not in and of itself a violation of due process, especially without a request for disclosure before trial and where other witnesses identified the defendant as the perpetrator of the offense.

3. While it could be argued that the police officer's testimony concerning the identification of defendant by Benn dealt with the nature or quality of the identification rather than what took place and under what circumstances, its admission was not reversible error where two other witnesses identified the defendant and any prejudice flowing from the testimony was minimal.

4. A trial judge is not under a duty to give an additional limiting instruction, absent a request, where a clear and correct limiting instruction is previously given to the jury. Following the arguments of counsel, the trial judge correctly instructed the jury on the limited use of impeachment evidence. This was sufficient in the absence of a request for further limiting instructions.

5. Defendant's conviction cannot be set aside on his claim of misleading jury instructions. As a general rule failure to make a timely objection to jury instructions precludes appellate review in the absence of manifest injustice or a miscarriage of justice. There was no trial objection and there is no manifest injustice.

Affirmed.

1. WITNESSES — CRIMINAL LAW — IDENTIFICATION — PHOTOGRAPHS.

Convictions based on eyewitness identification at trial following a pretrial identification by photograph will be set aside on that ground only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification.

2. WITNESSES — CRIMINAL LAW — IDENTIFICATION — PHOTOGRAPHS — DUE PROCESS.

Failure to preserve a group of photographs shown to a complainant for pretrial identification purposes is not in and of itself a violation of due process, especially where no pre-trial request was made for the photographs or any other evidence of a

photographic identification and where the defendant was identified at trial by several other witnesses.

3. CRIMINAL LAW — WITNESSES — EVIDENCE — IDENTIFICATION TESTIMONY — EYEWITNESS IDENTIFICATION — PREJUDICE.

It was not error to admit arguably improper identification testimony where a defendant was unqualifiedly identified at trial by two different res gestae witnesses and any prejudice flowing to the defendant was minimal in light of a police officer's testimony that the defendant's identification by a complaining witness was uncertain and equivocal.

4. APPEAL AND ERROR — INSTRUCTIONS TO JURY — LIMITING INSTRUCTIONS — FAILURE TO REQUEST.

Claims of error in instructions to the jury are considered in the context of all the instructions given; where a clear and correct limiting instruction is previously given to the jury, the trial court is not under a duty to give an additional limiting instruction absent a request.

5. CRIMINAL LAW — INSTRUCTIONS TO JURY — MANIFEST INJUSTICE — FAILURE TO OBJECT — APPEAL AND ERROR.

Generally, in the absence of manifest injustice or a miscarriage of justice, a conviction should not be set aside on the basis of alleged error in the jury instructions, where no objection was raised at trial.

6. CRIMINAL LAW — APPEAL AND ERROR — ERROR.

A conviction will not be set aside where the Court of Appeals, after an examination of the record, is not convinced that reversible error was committed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *Edward Grant,* Prosecuting Attorney, and *Bruce A. Barton,* Special Prosecuting Attorney, for the people.

*John A. Lydick,* Assistant State Appellate Defender, for defendant on appeal.

Before: D. C. RILEY, P.J., and V. J. BRENNAN and G. W. CROCKETT, JR.,* JJ.

---

* Former Detroit Recorder's Court judge, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

G. W. Crockett, Jr., J. Defendant was convicted by a jury of armed robbery, MCL 750.529; MSA 28.797, and assault with intent to commit murder, MCL 750.83; MSA 28.278, on September 7, 1977. The charges against the defendant arose out of an incident that occurred in the City of Jackson on November 17, 1976. A man entered Benn's Sweeper Shop, which is owned and operated by Philip Benn and Donna Mae Benn, and robbed Philip Benn at knife point. During the course of the robbery, Philip Benn was stabbed four times.

The first question we address is whether the trial court committed reversible error in ruling that the photographic identification procedures used in the investigation of this case were neither suggestive nor otherwise improper.

On the day after the robbery and assault, Jackson Police Detective Maurice Crawford displayed a series of photographs to the elderly victim, Philip Benn, who was then in the intensive care unit of a local hospital as a result of the injuries he sustained during the robbery of his store. Mr. Benn was in serious condition at the time of this photographic showup. He picked out a photo of the defendant, Joe Lee Adams, as a subject who looked like the man who robbed and attacked him.

Prior to trial, there was no motion to suppress and no request for an evidentiary hearing on this issue of identification. However, on the first morning of trial, after the selection of the jury, defense counsel requested a hearing at which he would be permitted to examine the nature of the photographic identification session that Mr. Benn had participated in while in the intensive care unit at the hospital. The trial court granted defense counsel's request for such a hearing, and the hearing was conducted outside the presence of the jury.

Detective Crawford displayed six or seven pictures of different individuals to Mr. Benn at the photographic identification session. In putting the photo showup pack together, Detective Crawford testified that he attempted to use only pictures of individuals whose appearances were roughly the same. Detective Crawford stated that no suggestions were made about any photograph and that he remained completely impartial during the identification procedure. However, Detective Crawford did explain that he had expected Mr. Benn to select, from the pictures displayed, a photograph of one Larry Graham, who was at that time the principal suspect in the case. Crawford stated that he was surprised when Mr. Benn tentatively picked the photo of the defendant as his assailant, rather than the photo of Larry Graham.

Defense counsel moved to suppress any testimony of Mr. Benn which would go toward identifying the defendant. This objection was based on the ground that the failure to preserve the photo display which the police had shown Mr. Benn tainted any subsequent identification at trial. In response to Detective Crawford's testimony that there was nothing suggestive about the photographic identification procedure, defense counsel claimed that there was no way of telling without an opportunity to examine the photographs. On this point, the trial court suggested that Mr. Benn be called to testify for purposes of the hearing.

At the time of trial, Philip Benn was still suffering from the injuries he sustained in the assault. His wife indicated that he easily became confused. His testimony at the hearing on the identification issue and during the trial itself was confused and often not responsive. The trial judge recognized this problem and noted that Mr. Benn was not

clear in response to the questions being asked because of his physical condition.

Mr. Benn stated that Detective Crawford had not told him which picture to pick out at the photo identification session. On cross-examination, he stated that his wife had shown him a sketch of some kind that appeared in a local newspaper. (Apparently, this sketch which appeared in the local newspaper was a composite sketch of an individual who was at that time a suspect in various robberies in the Jackson area. However, there was no evidence that the sketch in question even resembled the defendant.) Mr. Benn was not sure as to when he was shown this sketch. At one point he stated that it was the second day after the robbery, and later that it was more than two days after the robbery.

Donna Mae Benn then testified that she had shown her husband the newspaper article and accompanying sketch after he had left the hospital, not while he was in the hospital. This would have been after the photo identification session in question. On cross-examination, Mrs. Benn stated that there were no newspapers in her husband's hospital room at any time. Defense counsel then argued that perhaps someone else, other than Mrs. Benn, had shown Mr. Benn a sketch from the newspaper. The trial court ruled that there was no evidence to support such a suggestion, and that the photo identification procedures which took place while Mr. Benn was in the intensive care unit of the hospital were not improper. In fact, the trial court noted that there was absolutely no evidence that the sketch in question even resembled the defendant.

The Michigan Supreme Court has recognized the standard for evaluating photographic identification

procedures set forth in *Simmons v United States,*
390 US 377, 384; 88 S Ct 967; 19 L Ed 2d 1247
(1968):

"[C]onvictions based on eyewitness identification at
trial following a pretrial identification by photograph
will be set aside on that ground only if the photo-
graphic identification procedure was *so impermissibly
suggestive as to give rise to a very substantial likeli-
hood of irreparable misidentification.*" (Emphasis
added.)

See *People v Kachar,* 400 Mich 78, 90; 252 NW2d
807 (1977), *People v Lee,* 391 Mich 618, 626; 218
NW2d 655 (1974), *People v Anderson,* 389 Mich
155, 168; 205 NW2d 461 (1973).

We are not convinced that the procedure in-
volved here was impermissibly suggestive; nor was
it "unfair, biased, or a violation of the accused's
constitutional rights".

While it would have been better procedure for
the police to have preserved the group of photo-
graphs shown to the complainant, failure to do so
is not in and of itself a violation of due process.
*United States v Clemons,* 144 US App DC 235, 238;
445 F2d 711, 714; 440 F2d 205 (1970). See also,
*People v Hill,* 88 Mich App 50, 60-61; 276 NW2d
512 (1979). This is especially so where, as here, no
pre-trial request was made for the photographs or
any other evidence of the photographic identifica-
tion and the defendant was identified at the trial
by several other witnesses.

Defendant further argues that the officer's testi-
mony concerning the complaining witness's identi-
fication of the defendant in a photo lineup was
hearsay and should have been excluded by the
trial judge. The relevant portion of the transcript
reveals the following colloquy:

"Q. (* * * [*Prosecuting Attorney*] continuing): Officer Crawford, if I may rephrase the question. You have testified that he did not—did he pick out Mr. Graham?

"A. No, he did not.

"Q. Did he pick out anyone positively?

"A. No.

"Q. And who did he call to your attention tentatively?

"A. Joe Lee Adams.

"Q. The Defendant, is that correct?

"A. Yes."

In *People v Poe,* 388 Mich 611, 617-619; 202 NW2d 320 (1972), the Court held that it was error to admit the police testimony and notes showing that witnesses had made a "positive identification" of defendant at a lineup. The Court distinguished a previous Michigan case, *People v Londe,* 230 Mich 484; 203 NW 93 (1925), in the following manner:

"*Londe* restricts the police officer's testimony to 'what took place' and under 'what circumstances the identification was made' and not, as here, the nature or quality of the identification." *Poe, supra* at 618.

The officer's testimony in the case at bar was thus arguably improper. However, under these facts, we decline to find its admission reversible. Any prejudice flowing to the defendant was minimal in light of the officer's remarks as to the uncertain and equivocal nature of the identification. Moreover, defendant was unqualifiedly identified at trial by two different res gestae witnesses to the crime. We also note that, under *People v Sanford,* 402 Mich 460; 265 NW2d 1 (1978), the instant testimony would now be admissible. Hence, a retrial on this issue would be an empty gesture.

Defendant also argues that the trial court erred in failing to repeat, *sua sponte*, the limiting instruction on the use of impeachment evidence when claimed impeachment testimony was subsequently read back to the jury during their deliberations.

Barney Jones testified that he was near Benn's Sweeper Shop at the time of the robbery and saw a man running away with a purse and a knife in his hand. He stated at trial that he did not know who it was that he saw running from Benn's Sweeper Shop. However, Jones had testified at the preliminary examination that it was the defendant that he saw running from the scene carrying a knife and a purse. (Jones was clearly uncooperative as a witness at trial. In fact, his very presence at trial had to be secured by apprehending him on a bench warrant after he had failed to appear pursuant to a subpoena ordering him to appear. Jones was held in jail the night before he testified.) The prosecutor used the preliminary examination transcript of Jones's prior testimony in an effort to impeach Jones's testimony at trial. Defense counsel then asked the trial judge to instruct the jury on the limited use of impeachment evidence. In response to this request, the trial judge stated that:

"THE COURT: The jurors will be instructed about those matters at the proper time. The testimony that they are going to consider has to come from the witnesses during the trial and they may take that into consideration; everything that comes out during the trial, as well as what is being used by * * * [prosecuting attorney] here.

\* \* \*

"THE COURT: When I say what is being used by * * * [prosecuting attorney], they may consider the

questions and answers that he is preponderating *[sic]* and the references to the preliminary examination that he is using to question the witness from." ,

Following the arguments of counsel, the trial judge correctly instructed the jury on the limited use of impeachment evidence as set forth in CJI 4:5:01.

After the jury had begun their deliberations, they requested that the testimony of Detective Crawford, Barney Jones, and two other witnesses be read to them. After Jones's testimony was read to the jury, no additional limiting instruction on the use of impeachment evidence was given. However, no such additional instruction was requested.

Claims of instructional error are considered in the context of all the instructions given. *People v Taylor,* 44 Mich App 640; 205 NW2d 884 (1973). Where a clear and correct limiting instruction is previously given to the jury, the trial court is not under a duty to give an additional limiting instruction absent a request. Defendant's reference to *People v Cox,* 61 Mich App 37; 232 NW2d 188 (1975), is clearly inappropriate. In *Cox,* no limiting instruction had been given at all. Moreover, the *Cox* Court found that the record showed that the jury was confused as to how the preliminary examination testimony was to be used and that the jury focused on that testimony in their deliberations. That is not the situation here.

Defendant further argues that the trial court's instructions were misleading. None of these instructions were objected to by defense counsel. In the absence of manifest injustice or a miscarriage of justice, a conviction should not be set aside on the basis of jury instructions when no objection is raised at trial. GCR 1963, 516.2, *People v Carroll,* 396 Mich 408, 415, 416; 240 NW2d 722 (1976).

An examination of the record does not convince us that reversible error was committed in this case.

Affirmed.