## THE PEOPLE v. JAY MEAD.

*Evidence of recognition of prisoner—Hearsay—Uncalled for statements by witness—Collateral facts—Footprints—Proof of character.*

A witness in a criminal case can testify, as introductory to his own investigations, that another witness had recognized the prisoner after the offense was committed; but he cannot state what such witness said as to the respondent's identity, as this would be hearsay.

In a prosecution for burglary a woman who slept in the house where it was committed testified that she saw the burglar plainly enough to recognize him afterwards, and that two days afterward, while with her husband, she saw respondent and told her husband she believed him to be the man. The husband testified that on that occasion she recognized the respondent and added that she recognized him as being the man that was in her bed-room at the time of the burglary; that he told her to be sure, and she said she was sure. *Held* that the additional statement was hearsay and inadmissible.

A witness cannot bring error into a case by volunteering inadmissible testimony that is immediately stricken out by the trial judge.

In prosecuting for a particular burglary the people can show facts apparently connected with the act of breaking into other houses at the same time if they tend to show that the several burglaries were parts of one scheme and that the person concerned in the others was therefore guilty of the offense for which the prosecution was instituted; the tendency of the evidence is a question for the jury.

A prisoner on trial for crime cannot be required, against objection, to try on a shoe to determine whether tracks found at the scene of the offense were his own; nor if he objects, can he properly be required to measure the shoe after trying it on. But if he tries it on

without objection, the ruling that he must measure it is not prejudicial error, as any witness could do it as well as he.

A person on trial for crime is entitled in all cases to the benefit of testimony to his good character; but if the evidence of his guilt is convincing beyond reasonable doubt he must be convicted notwithstanding his good reputation.

Error to Shiawassee. (Newton, J.) Jan. 18.—Feb. 27.

BURGLARY. Respondent was convicted. Affirmed.

Attorney General *Jacob J. Van Riper* for the People.

*Gilbert R. Lyon* for respondent. A respondent on trial cannot be required to make evidence against himself by trying on shoes to fit tracks found near the scene of the offence: *Stokes v. State* 5 Baxter (Tenn.) 619; evidence of good character is always relevant in behalf of a person on trial for an offence: *United States v. Whitaker* 6 McL. 342; *Jupitz v. State* 34 Ill. 516; *State v. Ford* 3 Strobh. 517 (note); *Epps v. State* 19 Ga. 102; *State v. McMurphy* 52 Mo. 251; *People v. Ashe* 44 Cal. 288.

COOLEY, J. The respondent stands convicted of feloniously breaking into the house of one Gregory, and committing a larceny therein. The house was a farm-house in the country, and it was shown that several houses in the neighborhood were broken open the same night. At the house of one Mitchell a plate of butter was taken.

The wife of Gregory, who was in bed when the burglary was committed, testified on the trial that she saw the burglar with sufficient distinctness to enable her to recognize him afterwards, and that two days thereafter, when in company with her husband, she saw the respondent and told her husband she believed him to be the man. The husband was subsequently sworn, and after calling his attention to this subsequent occasion, he was asked, whether his wife then recognized any person as the person she saw that night. He answered in the affirmative, and was then further asked whether she recognized the respondent as the man. This was objected to, but the court ruled that it was proper to

show that the fact of recognition was communicated to her husband, without stating what she said. The question was then put in this form : Did she recognize anybody ? This was objected to, but allowed, and the witness answered : She did. The further question was then asked : Whom did she recognize ? And the answer given was : This defendant. She recognized him as being the man that was in her bed-room on the first of November [the time of the burglary]. I told her to be sure, and she says, I am sure.

It will be observed that in this the witness went altogether beyond the question, and beyond any permission that could be implied from the ruling of the judge. The question was simple : Whom did she recognize ? It was also proper enough to put it, as introductory to what the witness himself had to say respecting his own subsequent investigations. But the witness, not content with giving a simple answer to it, added what in effect was a statement that his wife told him she recognized the respondent as the burglar. The statement was hearsay, and it was likely to be exceedingly mischievous, for much depended in the case upon this recognition. But the judge immediately, without waiting for any objection, ordered what was said beyond the simple answer to the question, to be stricken out. It is said on behalf of the respondent that this did not undo the mischief : the statement had gone to the jury and would have its effect, whatever ruling the judge might make on the subject. This may be true ; and so may any unwarranted remark made by a stranger in the presence of the jury, or of any of them, have an injurious effect. But the conviction is to be tested in this Court by the rulings of the judge ; and if no errors are pointed out in them, it must stand. A witness cannot put error into a case by an unauthorized remark, neither called out by a question nor sanctioned by the judge ; and if what he does or says improperly is likely to do much mischief, it is presumed the judge will apply the proper corrective in his instructions if requested to do so. In this case he applied it on the instant, so far as ruling out the improper statement could do so ;

and no doubt he would have given specific caution to the jury if requested. But it is clear that such fault as there was in the case was that of the witness; the rulings of the judge were correct.

The prosecution was also allowed to give evidence that on the next day after the burglary the respondent picked up near the road fence the plate on which the butter had been carried off from Mitchell's, claiming to have just found it there. It is objected that this evidence, if of any force at all, could only have tended to connect the respondent with the burglary at Mitchell's, or at least to have raised a suspicion that he was concerned in it. The prosecution concede that if it had no tendency to connect the respondent with the particular offense for which he was on trial, it should not have been received; but their theory of the case was that the several burglaries were all substantially one transaction, and whatever tended to show participation in one, was evidence of participation in all. We agree in this view. The proof was not given to show a different and distinct felony, but as tending to prove the very felony then under investigation; and its tendency to that end was for the jury.

The prosecution gave evidence also of certain tracks discovered the morning after the fire, and which were supposed to be those of the guilty party. A rubber shoe was produced, and when the respondent took the stand in his own behalf he was asked to try it on, which he did without objection. After he took it off he was asked to measure it. This his counsel objected to, but the objection was overruled, and he made the measurement and stated the result. Had there been any objection to the respondent's trying on the shoe, the court would have had no authority to require it, and even the simple matter of the measurement the respondent might have declined had he seen fit. But it is to be observed that the only matter objected to was the simple measurement of a shoe, which any one might have made as well, and which derived no significance from having been done by the respondent himself. Its being done by himself

rather than by another could not harm him, and the error of the court in overruling the objection of his counsel was without legal injury.

The respondent proved by his neighbors his previous good character and reputation. Upon this the trial judge instructed the jury as follows:

"This testimony or quality of testimony in a criminal case is of great consequence and importance, both to the People and the accused. To the accused it is of the greatest value, and in cases of doubt growing out of the conflict of testimony, when you are not satisfied beyond a reasonable doubt of his guilt, is entitled to weight by the jury before whom the case is tried. This kind of evidence is admitted on the ground of the improbability that one who has always before borne a good character during life should suddenly cast it away by the perpetration of great crimes. The law is not so foolish as to ignore the daily lessons of life, but recognizes the fact that character is as much a temple of human building as is the most splendid triumph of architecture, art and labor. It recognizes in each day of life a block of clean, solid material, which after years of contest and toil, notwithstanding all the dross and dust that gather around it, still remains fair and strong and unsullied, until, according to the length of the life of the human artificers, these blocks stand as firm columns in the temple of his life; and the law has said that in the day of trouble and trial the man who has so builded shall not have builded in vain,—that he may invoke it for his protection,—and this is right and just. Circumstances of guilt may even gather around the innocent,—they may press him with urgent force,—but in such a situation he may invoke his good character, in other words, appeal to his good character. In doubtful cases too much consideration and importance cannot be attached to this kind of evidence. As was said by a distinguished jurist of the state of New York:

'When a party is charged with a crime, or any other act involving moral turpitude, which is endeavored to be fastened upon him by circumstantial evidence, or by the testimony of doubtful witnesses, he may introduce proof of his former good character for honesty and integrity to rebut the presumption of guilt arising from such evidence, which it may be impossible for him to contradict or explain; but if the case is not doubtful, if the testimony carries conviction of the truth of guilt beyond a reasonable doubt to the

minds of the jury, if it becomes evidence convincing and satisfying the mind and the consciences of the jury of the truth of the guilt of the accused beyond a reasonable doubt, then character, however grand and noble in the past, must give way to the inevitable results of crime, for crime is a maelstrom which washes out and makes blank the past history, burying it in oblivion.'

" However good a man's character may have been in the past, if the proof is clear and convincing it would be the duty—that is, convincing of guilt—it would be the duty of the jury to say so. · Good character helps where the proof is doubtful or uncertain, or when there is reasonable doubt of the guilt of the party ; but when this does not exist it becomes the solemn duty of the jury to say, if they believe it, the word 'guilty.' "

No just exception can be taken to this instruction. We agree with counsel for the respondent that an accused party who is of good reputation is entitled to the benefit of it in all cases. *People v. Garbutt* 17 Mich. 9 ; *Remsen v. People* 43 N. Y. 6 ; *Stoner v. People* 56 N. Y. 515 : *State v. Patterson* 45 Vt. 308 ; *Williams v. State* 52 Ala. 411 ; *Harrington v. State* 19 Ohio St. 269 ; *Silvus v. State* 22 Ohio St. 90 ; *State v. Henry* 5 Jones N. C. L. 66 ; *Kistler v. State* 54 Ind. 400. But the trial judge gave no instruction to the contrary of this ; he merely told the jury that if the evidence was convincing beyond a reasonable doubt, it was their solemn duty to convict notwithstanding the good reputation. This was correct.

No other exceptions require notice and the conviction must be affirmed.

GRAVES, C. J. and, MARSTON, J. concurred.