PEOPLE v SYKES

Docket No. 190894. Submitted November 5, 1997, at Grand Rapids. Decided April 10, 1998, at 9:25 A.M.

Talanda Sykes was convicted by a jury in the Kalamazoo Circuit Court, Richard R. Lamb, J., of breaking and entering and of larceny in a building. The defendant appealed.

The Court of Appeals *held*:

1. The trial court abused its discretion in admitting the testimony of Kalamazoo Public Safety Officer Stanley McDonald about a discussion he had with a convenience store clerk concerning the race, age, height, clothing, and hairstyle of each of three men McDonald saw at the store approximately an hour before the break-in, which occurred at another location. McDonald's testimony is not admissible under MRE 801(d)(1)(c) as nonhearsay testimony concerning an out-of-court identification by the clerk because the clerk did not in her statements to McDonald identify any of the three men.

2. The trial court's error was harmless because there was no reasonable probability that the erroneous admission of testimony affected the outcome of the trial. There was other evidence indicating that the defendant was one of three men who purchased a pair of gloves at the convenience store, broke into a building, and took a computer keyboard and monitor from the building.

3. There was sufficient evidence in support of the defendant's convictions of breaking and entering and larceny in a building.

Affirmed.

1. Criminal Law — Evidence — Identification — Statements Concerning Prior Identifications.

A statement of identification of a person made after perceiving the person is not hearsay if the declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement (MRE 801[d][1][C]).

2. Criminal Law — Trials — Harmless Error.

An alleged error by a trial court not involving a constitutional issue does not warrant a reversal unless there is a reasonable probability that the error affected the outcome of the trial.

3. CRIMINAL LAW — BREAKING AND ENTERING.

>    The elements of breaking and entering are breaking into a building, entering the building, and doing so with the intent to commit a larceny or felony therein (MCL 750.110; MSA 28.305).

4. CRIMINAL LAW — LARCENY IN A BUILDING.

>    The elements of larceny in a building are an actual or constructive taking of goods or property, a carrying away or asportation, the carrying away must be with a felonious intent, the goods or property must be the personal property of another, the taking must be without the consent and against the will of the owner, and the taking must occur within the confines of the building (MCL 750.360; MSA 28.592).

*Frank J. Kelley*, Attorney General, *Thomas L. Casey*, Solicitor General, *James J. Gregart*, Prosecuting Attorney, and *Michael H. Dzialowski*, Assistant Prosecuting Attorney, for the people.

*Paul G. Staten*, for the defendant on appeal.

Before: MARKEY, P.J., and KELLY and WHITBECK, JJ.

PER CURIAM. Defendant was convicted by a jury of breaking and entering, MCL 750.110; MSA 28.305, and of larceny in a building, MCL 750.360; MSA 28.592. Defendant was sentenced to three years' probation and now appeals as of right. We affirm.

I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

The origin of this case is in the breaking and entering of a building on West Vine Street in Kalamazoo and the subsequent larceny from that building of a computer monitor and keyboard, both occurring at approximately 4:00 A.M. on January 12, 1995. Officer Stanley McDonald of the Kalamazoo Public Safety Department responded to the report of the breaking and entering as did Officer Eric Arrans, with his tracking dog. The tracking dog led Officer Arrans to a

garbage dumpster behind the Vine Street building, where Officer Arrans later found the computer monitor and keyboard. In the alley behind the building, Officer Arrans noticed some gloves and hats lying in the alleyway. The tracking dog then led Officer Arrans to a local park where other officers had detained three men, including defendant.

At trial, the testimony of two witnesses was particularly important to the major question presented on appeal; these witnesses are Officer McDonald and Jayne Belanger. Officer McDonald testified not only about his response to the report of the breaking and entering but also about several other events, one before and one after the apprehension of defendant. Regarding the prior event, Officer McDonald testified that, while on his regular patrol on January 12, 1995, at approximately 3:00 A.M., he observed three men, including defendant, at a Dairy Mart store that was located about eight or nine blocks from the Vine Street building. Officer McDonald testified that one or more of the men made a purchase at the store. Officer McDonald testified that the brown cotton gloves found in the alleyway at the scene of the breaking and entering were those that he had seen one of the three men carry when they left the Dairy Mart. Officer McDonald also testified that, near the Dairy Mart, he saw one of these men hand the gloves to another, identified as a codefendant. Officer McDonald testified, however, that he did not remember which of the two men (defendant or the third man) handed the gloves to the codefendant.

Regarding the subsequent event, Officer McDonald testified that, after the apprehension of defendant, he returned to the Dairy Mart and interviewed the store

clerk, Belanger. Officer McDonald testified that the police report that he prepared at the time "state[d] a conclusion on [his] part" and that he was led to that conclusion by "[a] discussion with the store clerk, and the description of the three subjects that had made the purchase, attempting to identify which subject made the purchase." The prosecution asked Officer McDonald for his conclusion, defense counsel objected on the ground of lack of foundation and, after reviewing Officer McDonald's report, the trial court sustained the objection.

The prosecution also called Belanger, who testified that three men came into the Dairy Mart at approximately 3:00 A.M. on January 12, 1995, and that one of the men purchased, among other items, a pair of brown gloves. Belanger also testified that a police officer had asked her questions about this incident and that she was able to give the police officer some fairly specific information at the time. During her in-court testimony, however, Belanger could not identify defendant as being one of the three men who came into the Dairy Mart.

Following this testimony, the prosecution made an offer of proof outside the jury's presence. The prosecution stated that it would recall Officer McDonald, who would testify that Belanger gave him specific information regarding the three men in the Dairy Mart and that only one of the three men Officer McDonald had seen leaving the store matched the description that Belanger gave of the man who purchased the gloves. The prosecution sought admission of the proffered testimony under MRE 801(d)(1)(C). The trial court ruled that the proffered testimony did not fall within the ambit of MRE 801(d)(1)(C), noting that

"we do not have here a—true statement of identification." The trial court also noted that "[The] officer—what—what—is being offered to the jury is Officer McDonald's conclusion predicated upon a statement attributed to a witness who here before the jury did not make the same statement."

On the next day of trial, the prosecution renewed its argument with respect to MRE 801(d)(1)(C), stating that Officer McDonald would testify that Belanger had said that the tallest of the three men purchased the gloves. On the basis of Officer McDonald having seen the three men in the Dairy Mart parking lot, the prosecution contended that this description could only match defendant. After again reviewing Officer McDonald's report, the trial court reversed its previous ruling and allowed the proofs to be reopened, stating:

> I will reverse my previous thinking on this. I think this is—this is a classical [sic] example of a declaration not being hearsay, if it's of identification of an individual made after perceiving the individual, and the person who made the statement, the declarant, is available for cross-examination.[1]

The prosecution then recalled Belanger, who stated that, although she had given Officer McDonald some information, she could not recall what she told him

---

[1] The trial judge made the following statement to the prosecution:

But, in order to lay the foundation so that Mr. Charland can cross-examine the witness on the *identifying statement,* and this fit in with the—with the requirements of the Rule 801, and the hearsay exception, I think you ought to explore with her whether or not she can answer the questions about the identification and if she recalls it. Then the weight that'll be given to the testimony is up to the jury. [Emphasis supplied.]

about who purchased the gloves. After Belanger read
Officer McDonald's report, the following exchange
took place:

> [Prosecutor:] Okay. Now, after looking at the report that
> Officer McDonald made does that refresh your recollection
> at all as to, specifically, what you told him, regarding the
> identification of the person who made the purchase?
>
> [Witness:] From what I can recall, he came back in and
> asked me what they purchased and wh—wh—you know,
> who purchased them and how many, you know, how many
> people were at the counter at the time. The same questions
> you'd asked me. And I've told 'em pretty much the same
> thing: They bought brown gloves, and only one person
> bought something.
>
> [Prosecutor:] All right. And, do you recall, specifically,
> what it is that you related to him, as far as identifying
> which person? After—after reviewing this do you recall,
> specifically, what it is you told him regarding which person
> it is who made the purchase?
>
> [Witness:] No. I'm sorry.
>
> [Prosecutor:] But—but, you did have in your mind, at the
> time, the identification. It was fresh in your mind as the
> identification of the person who did make the purchase.
>
> [Witness:] Yes.
>
> [Prosecutor:] Okay. And you related that to Officer
> McDonald.
>
> [Witness:] Yes.
>
> [Prosecutor:] All right. Thank you.[2]

The prosecution then recalled Officer McDonald,
who testified that, in his interview with Belanger at
the Dairy Mart, he asked her a number of questions in
an attempt to clarify her recollection of which of the
three men actually purchased the gloves. Officer

---

[2] The record does not reflect any objection based upon the leading
nature of the prosecution's questions.

McDonald further testified that he and Belanger discussed such matters as the race, age, height, weight, clothing, and style of haircut of the three men, although he did not recall what exactly Belanger had told him about the purchaser of the gloves. Officer McDonald did testify that Belanger "was able to give me a very care—clear idea of which one had purchased the gloves." Officer McDonald testified that he did not note in his report "the exact specific of—of the items that we discussed." Officer McDonald said that the information given to him "was very clear that—that it matched only one" of the three men, that is defendant.[3] On cross-examination, Officer McDonald stated that he did not include in his report any of the identifying items that he discussed with Belanger and he only noted that "the conclusion we came to was Mr. Talanda Sykes."

During closing argument, the prosecution wove this testimony together:

> It's the Prosecution's theory and argument that the oldest of the three, the Defendant here; the tallest of the three, the Defendant here; had gone in and purchased the gloves and given them to Prentiss Anderson; the person whose footprint is eventually identified inside of the building; and, that he was there, and he was, basically, the leader of this situation, that he had these gloves for a purpose. He was giving the gloves to Prentiss Anderson, because now they're gonna go out and around, and they're going to find something to steal.

---

[3] Officer McDonald's exact words were: "The subject that was later identified by other officers as Talanda Sykes." Officer McDonald then identified defendant in the courtroom.

## II. THE HEARSAY OBJECTION

### A. HEARSAY GENERALLY

Under the Michigan Rules of Evidence, hearsay is defined as "a statement, other than the one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." MRE 801(c). A "statement" is "(1) an oral or written assertion or (2) nonverbal conduct of a person, if it is intended by the person as an assertion." MRE 801(a). A "declarant" is "a person who makes a statement." MRE 801(b).

As noted by Justice CAVANAGH in his dissent in *People v Malone*, 445 Mich 369, 399; 518 NW2d 418 (1994):

> Hearsay is repugnant to the truth-seeking function of litigation because the statement is made in the absence of testimonial safeguards implemented to foster reliability. At trial a witness must testify under oath or affirmation, exposed to the threat of perjury. The trier of fact can observe a witness' demeanor and physical response to offered testimony. Furthermore, a witness is exposed to contemporaneous cross-examination regarding his offered assertions. Binder, Hearsay Handbook (2d ed), § 3.01, p 59. Cross-examination is "beyond any doubt the greatest legal engine ever invented for the discovery of truth." 5 Wigmore (Chadbourn rev), § 1367, p 32. The safeguards are believed to aid the exposure of possible ambiguity, insincerity, faulty perception, and erroneous memory. The absence of the three testimonial safeguards render hearsay statements untrustworthy.

Thus, the basic objection to hearsay testimony is that if a witness offers an assertion made by a declarant who does not testify—and if the assertion is offered as evidence of the truth of the matter asserted—the trier of fact is deprived of the opportu-

nity to evaluate the demeanor, responsiveness, and credibility of the declarant, particularly because the declarant cannot be tested by cross-examination.

### B. IDENTIFICATION TESTIMONY

In general, testimony about a prior out-of-court identification falls into two categories: testimony by the identifier/declarant and testimony by a third-party witness to the identifier/declarant's statements. With respect to testimony by an identifier/declarant, even before the adoption of the Michigan Rules of Evidence, Michigan cases have allowed such testimony. For example, in *People v Mead*, 50 Mich 228, 229; 15 NW 95 (1883), the Court let stand a woman's testimony that she recognized the defendant as the man who was in her house during a burglary and that she had previously identified the defendant to her husband out of court. In *People v Londe*, 230 Mich 484; 203 NW 93 (1925), the Court held that it was proper for two witnesses who had seen a robbery to testify that they later identified the defendant as one of the three men who committed the robbery at an out-of-court showup at police headquarters. Also, in *People v Poe*, 388 Mich 611; 202 NW2d 320 (1972), the Court let stand the identifying witnesses' testimony of their own prior out-of-court identification.[4] In general, this

---

[4] But see *People v Hallaway*, 389 Mich 265, 275-276; 205 NW2d 451 (1973) (separate opinion of BRENNAN, J., joined by T. G. KAVANAUGH, J.) in which Justice BRENNAN stated:

> Hearsay is defined as an extra-judicial statement which is offered for the purpose of proving the truth of the thing said. While some writers have suggested that the hearsay rule need not be applied to the extra-judicial [i.e. out-of-court] statements of a declarant, who later testifies as a witness, *this Court has not recognized such an exception to the hearsay rule.* [Emphasis supplied.]

is logical because, when the identifier/declarant testifies as a witness, the trier of fact has the opportunity to evaluate the demeanor, responsiveness, and credibility of the identifier/declarant, and the identifier/declarant can be tested by cross-examination.[5]

Testimony by a third party about an identifier/declarant's prior statements of identification arguably, at least before the adoption of MRE 801(d)(1)(C), was a different story. Justice COOLEY, writing for the Court in *Mead, supra* at 230, noted that the trial court properly struck testimony by a third party (the identifier's husband) that the identifier had previously stated to him that she recognized the defendant as the burglar. Thus, while letting stand the identifier/declarant's in-court testimony about her prior out-of-court identification of the defendant, the Court upheld the exclusion of third-party in-court testimony about the identifier/declarant's statements at the time of such prior out-of-court identification. Similarly, in *Londe, supra* at 487, the Court held that while an identifier/declarant may give in-court testi-

---

[5] It can be contended that, in allowing these prior statements by a witness, Michigan had departed somewhat from the orthodox hearsay rule that prior statements of a witness were admissible only for impeachment or under a recognized exception to the hearsay rule. In any event, such a departure would have been in line with on-going attempts to change the rule itself. As Justice BOYLE observed for the Court in *Malone, supra* at 375:

> The proponents of change, among them Wigmore and Learned Hand, countered the orthodox view that substantive use was objectionable because the prior statement when made was not under oath, subject to cross-examination, or in the presence of the trier of fact. They observed that the oath was no longer the principal safeguard of trustworthiness, that the interests of cross-examination were met by the declarant's presence at trial, and that the trier's advantage of observing the demeanor of the witness was also satisfied.

mony regarding an out-of-court identification, a third party who witnessed the out-of-court identification may only testify in court regarding the "circumstances [under which] the identification was made." In *Poe*, *supra* at 618, the Court restricted third-party in-court identification testimony to " 'what took place' and under 'what circumstances the [out-of-court] identification was made.' " The Court defined as inadmissible testimony concerning "the nature or quality of the [out-of-court] identification." *Id.*

### C. ADOPTION OF THE MICHIGAN RULES OF EVIDENCE

In 1978, the Michigan Rules of Evidence were adopted. MRE 801(d)(1)(C) provides:

> A statement is not hearsay if . . . [t]he declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is . . . one of identification of a person made after perceiving the person.

With respect to testimony by an identifier/declarant regarding a prior out-of-court identification, the committee commentary noted:

> MRE 801(d)(1)(C) is consistent with prior Michigan law in admitting testimony by a witness as to his own prior statement of identification of a person made after perceiving him. *People v Poe*, 388 Mich 611; 202 NW2d 320 (1972); *People v Londe*, 230 Mich 484; 203 NW 93 (1925). [*In re the Proposed Michigan Rules of Evidence*, 399 Mich 951, 1004 (1977).]

The Michigan Supreme Court dealt with the subject of MRE 801(d)(1)(C)'s treatment of the second type of identification testimony—testimony by a third party about an identifier/declarant's prior out-of-court statements of identification—exhaustively in *Malone*,

*supra.* The Court noted that a critical witness, Carey Jackson, had identified the defendant, Donald Malone, at an out-of-court photographic showup but then at trial denied having identified the defendant. The Court further described the situation as follows:

> Over the defendant's objections, attorney James Hall, the attorney appointed to protect the defendant's right to a fair showup, testified that Carey Jackson identified defendant Malone as "the guy who had the gun," and signed a statement recording this identification. Attorney Hall also testified that the photographic showup was fair. Officer James Bivens of the Detroit Police Department also testified and confirmed Jackson's identification and signed statement. The trial court held that the testimony of both Officer Bivens and Attorney Hall was not limited to impeachment of Jackson's trial testimony and was admissible as substantive evidence under MRE 801(d)(1)(C). [*Malone*, 445 Mich 374.]

This Court in *Malone* had affirmed evidentiary rulings by the trial court, thereby rejecting the defendant's argument that the identification testimony was inadmissible hearsay. *People v Malone*, 193 Mich App 366, 369-371; 483 NW2d 470 (1992). The Supreme Court affirmed, holding that the testimony of attorney Hall and Officer Bivens about witness Carey Jackson's prior out-of-court identification of the defendant was not hearsay under MRE 801(d)(1)(C). *Malone*, 445 Mich 375. Justice BOYLE, writing for the majority, stated:

> As long as the statement is one of identification, Rule 801(d)(1)(C) permits the substantive use of any prior statement of identification by a witness as nonhearsay, provided the witness is available for cross-examination. 4 Weinstein & Berger, Evidence, ¶ 801(d)(1)(C)[01], pp 801-214 to 801-215.

All that is contemplated is an out-of-court statement of identification (which is simply a particular type of prior statement) and that the out-of-court declarant be subject to cross-examination "concerning" the statement. . . . Further, there is no distinction regarding whether the out-of-court statement is offered by a third party or is the statement of identification of a witness on the stand regarding something the witness previously said. Under the orthodox definition of hearsay, an out-of-court statement offered for the truth is inadmissible, whether offered through its maker or a third party. A statement of identification defined as nonhearsay is substantively admissible under Rule 801, without regard to its proponent. [*Id.* at 377-378.]

The rule in *Malone* has, of course, been subsequently followed by this Court. See *People v Whitfield*, 214 Mich App 348, 350-351; 543 NW2d 347 (1995).[6] Thus, the statement in defendant's brief that "[t]he Court of Appeals is divided as to whether MRE 801(d)(1) permits a third party to testify to the declarant's identification of defendant, or only to testify to facts and circumstances surrounding the prior identification" is egregiously wrong. The rule in Michigan under MRE 801(d)(1)(C), as enunciated in *Malone* and followed by this Court in *Whitfield*, is that third-party testimony of an out-of-court statement of identification by

---

[6] This Court stated:

A review of the record indicates that testimony of investigating officers was admitted concerning other witnesses' prior identifications of defendant. MRE 801(d)(1)(C) provides that third-party testimony about another's statement of identification, where the declarant has testified subject to cross-examination about the asserted identification, is not hearsay and is admissible as substantive evidence. [*Malone, supra*, 445 Mich 377.] The trial court did not abuse its discretion in admitting the testimony of the officers concerning the identifications made by other witnesses. [*Whitfield, supra* at 350-351.]

an identifier/declarant is substantive nonhearsay evidence—and is admissible even if it goes beyond the simple facts and circumstances of the prior out-of-court statement of identification—if the identifier/declarant testifies and is subject to cross-examination.

### D. THE TESTIMONY MATRIX

The unique facts of this case tend, at least somewhat, to cloud the basic issue with respect to the proper application of MRE 801(d)(1)(C). Each of the two relevant witnesses, Belanger and Officer McDonald, testified twice, on September 22, 1995, and on September 27, 1995. For ease of reference, and as shown on the matrix below, Belanger's September 22, 1995, testimony will be referred to as "Belanger 1" and her September 27, 1995, testimony will be referred to as "Belanger 2." Similarly, Officer McDonald's September 22, 1995, testimony will be referred to as "McDonald 1" and his September 27, 1995, testimony will be referred to as "McDonald 2."

| September 22, 1995 | September 27, 1995 |
|---|---|
| Belanger 1 | Belanger 2 |
| McDonald 1 | McDonald 2 |

In Belanger 1, Belanger stated that three men came into the Dairy Mart, one of whom purchased a pair of brown gloves. Belanger remembered that a police officer had questioned her and that she had given that officer fairly specific information, but she could not accurately identify any of the three men who came into the store. The issue with respect to Belanger 1 therefore is whether her out-of-court "fairly specific

information" given to Officer McDonald on the morning of January 12, 1995, constituted a "statement" of "identification of a person made after perceiving the person" within the meaning of MRE 801(d)(1)(C). As is frequently the case with lapsed or failing memory, Belanger's testimony in Belanger 1 is of little help in resolving this issue.

In McDonald 1, Officer McDonald stated that he had interviewed Belanger. The record reflects that Officer McDonald's police report referred to the discussion with Belanger and to "the description of the three subjects that made the purchase, attempting to identify which subject made the purchase." Quite clearly, standing alone, this third-party testimony by Officer McDonald of his conversation with the declarant, Belanger, does not set out, other than in the most general terms, a "statement" by Belanger that includes an "identification of a person made after perceiving the person" within the meaning of MRE 801(d)(1)(C).

In Belanger 2, Belanger, when asked about the "identification" of the person who made the purchases, stated that "[t]hey bought brown gloves and only one person bought something." With some prodding from the prosecution, Belanger then stated that her "identification" of the person who made the purchase was fresh in her mind at the time she related that "identification" to Officer McDonald. Thus, Belanger's purported statement of identification under MRE 801(d)(1)(C), was contained in the information she related to Officer McDonald concerning the person who made the purchases in the Dairy Mart

on the morning of January 12, 1995.[7] In Belanger 2, Belanger again could not recall what she told Officer McDonald and, therefore, her testimony is of little use on this issue, other than to establish the fact that she did convey some information.

Thus, the critical testimony is that of Officer McDonald in McDonald 2. In his second appearance, Officer McDonald stated that he and Belanger discussed the race, age, height, weight, clothing, and style of haircut of the three men who were in the Dairy Mart, including the purchaser of the gloves. Officer McDonald concluded that Belanger's description matched only defendant. Thus, the precise issue on appeal is whether Officer McDonald's testimony, which did not include any statement of identification made by Belanger, about the description Belanger gave to Officer McDonald, is an out-of-court statement of identification of a person made after perceiving the person, within the meaning of MRE 801(d)(1)(C). If it is, then Officer McDonald's testimony in McDonald 2 was properly admitted; if it is not, then such testimony should not have been allowed.[8]

---

[7] Presumably, this information was the "fairly specific information" to which Belanger referred in Belanger 1.

[8] We do not view as probative the fact that Belanger's description was oral; MRE 801(a) includes oral as well as written statements, for obvious reasons. Nor do we view as probative the fact that Officer McDonald's police report itself did not include the description given by Belanger to Officer McDonald. While a contemporaneous written record of that description might have enhanced the credibility of Officer McDonald's testimony in McDonald 2, this does not affect the admissibility of the testimony itself.

E. *WADE* AND ITS PROGENY

At the outset, we note that defendant asserts that the description Belanger gave to Officer McDonald was not a prior statement by Belanger. We disagree. This description was an oral assertion, intended by Belanger to be so. Thus, it was a "statement" by Belanger under MRE 801(a). The more difficult issue, however, is whether this statement was one of identification of a person made after perceiving the person, within the meaning of MRE 801(d)(1)(C).

In this regard, defendant advances the following definition of "identification" from Black's Law Dictionary (5th ed) at 671:

> Proof of identity. The proving that a person, subject, or article before the court is the very same that he or it is alleged, charged, or reputed to be; as where a witness recognizes the prisoner as the same person whom he saw committing the crime; or where handwriting, stolen goods, counterfeit coin, etc., are recognized as the same which once passed under the observation of the person identifying them.

Then, without any attempt to relate this definition to MRE 801(d)(1)(C), defendant asserts that, "This definition of and usage of 'identification' as a term of art encompassing the concept of a recognition by the witness of the subject as the same which once passed under the observation of the person identifying them is supported by a review of Michigan and Federal Case (sic) law dealing with identifications." In support of this assertion, defendant cites *United States v Wade*, 388 US 218; 87 S Ct 1926; 18 L Ed 2d 1149

(1967), and a number of Michigan cases decided by the Michigan Supreme Court and this Court.[9]

We note that in *Wade,* the United States Supreme Court held that, because of the established dangers of irreparable misidentification coupled with the inability to accurately reconstruct what happens at corporeal lineups, an accused in a federal prosecution is entitled to counsel at a "post-indictment" pretrial lineup in order to protect his right to meaningfully cross-examine the identifying witness at trial. *People v Anderson,* 389 Mich 155, 167; 205 NW2d 461 (1973). Thus, *Wade* was decided on due process grounds and without reference to the rules of evidence.[10] Further, nowhere in *Wade* or its Michigan progeny is there an explicit adoption of the definition of "identification" proposed by defendant.

We do recognize, however, that the Michigan cases defendant cites all involve an actual identification by a witness, whether through a lineup, a showup, or other means, of a person after initially perceiving that person. In addition, the Michigan cases dealing with hearsay cited previously in this opinion also involve the same type of subsequent actual identification by a witness of a person after initially perceiving that person. Thus, while *Wade* and its progeny are not directly relevant to the issue here, we do acknowl-

---

[9] *People v Kachar,* 400 Mich 78; 252 NW2d 807 (1977); *People v Solomon,* 391 Mich 767 (1974); *People v Anderson,* 389 Mich 155; 205 NW2d 461 (1973); *People v Johnson,* 202 Mich App 281; 508 NW2d 509 (1993); *People v Lafayette,* 138 Mich App 380; 360 NW2d 891 (1984); *People v Lyles,* 100 Mich App 232; 298 NW2d 713 (1980), vacated on other grounds 422 Mich 864 (1985); *People v Stanton,* 97 Mich App 453; 296 NW2d 70 (1980); *People v Johnson,* 58 Mich App 347; 227 NW2d 337 (1975).

[10] The text of FRE 801(d)(1)(C) is virtually identical to the text of MRE 801(d)(1)(C).

edge that the two-step process of identification—an initial perception followed by a subsequent actual identification—described in these cases, and in the Michigan cases, is useful in analyzing the issue presented here.[11]

### F. PERCEPTION AND IDENTIFICATION

Here, Belanger may have "perceived" defendant as one of the three men who came into the Dairy Mart in the morning of January 12, 1995, and she perhaps may have "perceived" him as the person who made the purchase; the record is singularly unhelpful on the point of initial perception. We need not address this issue, however, for we do not find Belanger's subsequent discussion about the race, age, height, weight, clothing, and style of haircut of the purchaser with Officer McDonald that same morning to be a statement of identification within the meaning of MRE 801(d)(1)(C). This discussion is not an "identification" within any interpretation of the rule that we have been able to unearth. Moreover, even if such a discussion did constitute a "statement of identification" under MRE 801(d)(1)(C), Officer McDonald did *not* testify about the content of the description (which he said he could not recall), but rather, in essence, testified that he had previously concluded that the description matched defendant. This certainly did not constitute testimony concerning a "statement of identification" by Belanger.

---

[11] See the definition of "identify" in Webster's New World Dictionary (3rd College, 1988) at 669: "(2) to recognize as being or show to be the very same person or thing known, described, or claimed; fix the identity of [to *identify* biological specimens]." This definition also implies a two-step process of identification.

Thus, assuming arguendo that Belanger may have initially "perceived" defendant, there was no subsequent "identification" of him, whether through a lineup, a showup, or other means, sufficient to satisfy the requirements of MRE 801(d)(1)(C).[12] This case, therefore, offers us the opportunity to stretch the rule to cover situations where an identifier/declarant provides only a description—if the "discussion" between Belanger and Officer McDonald actually contained a description—to a third party, and that third party concludes that this description covers the person initially perceived by the identifier/declarant. We decline the invitation because we do not believe this to be a reasonable interpretation of MRE 801(d)(1)(C). Such a description is simply not a statement of identification. We therefore conclude that the testimony of Officer McDonald in McDonald 2 should not have been admitted under MRE 801(d)(1)(C) and that the trial court abused its discretion in admitting such testimony.

### G. HARMLESS ERROR

A nonconstitutional error in a criminal case does not warrant reversal unless there is a reasonable probability that the error affected the outcome of the

---

[12] We do not hold that there can never be the admission of a statement of identification accompanying an actual physical identification. We note that in *United States v Fritz*, 580 F2d 370, 376 (CA 10, 1978), the Tenth Circuit Court of Appeals let stand as a statement of identification the comment by a police officer that he remembered the defendant from an earlier case. Here, however, the best that can be extracted from the record is that Belanger gave Officer McDonald "some fairly specific information" and that Belanger and Officer McDonald "discussed" such matters as the race, age, height, weight, clothing, and style of haircut of the three men who entered the Dairy Mart. *There is nowhere in the record, from either Belanger or Officer McDonald, an actual physical description of defendant or, indeed, of anyone.*

trial. *People v Sabin*, 223 Mich App 530, 540 & n 2; 566 NW2d 677 (1997); *People v Hubbard*, 209 Mich App 234, 243; 530 NW2d 130 (1995).[13]

The burglarized building in this case contained downstairs office space for two affiliated community organizations, Vine Ventures and the Vine Neighborhood Association, and residential apartments upstairs. Officer Charles Dahlinger testified that he received a radio call about a breaking and entering at that location at about 3:45 A.M. on January 12, 1995. Lynda Berge, the executive director of Vine Ventures who lived in one of the upstairs apartments, testified that, after being awakened at about 4:00 A.M. on January 12, 1995, she heard the alarm system sounding in the office space. Berge went downstairs and noticed that the monitor and keyboard of the computer that she used were gone. Amy Barcus, who was in the vicinity of the Vine Street building, testified that, at some point after 3:00 A.M. on a day in January 1995, she saw three people near the office. Barcus recalled one of them saying something like "Are you ready?" and then hearing a loud noise like a window breaking. Accordingly, the foregoing testimony placed three people at or near the location of the breaking and entering at the Vine Street building.

Officer Dahlinger testified that, after he arrived at the nearby park, he saw three males who "were the only individuals out that I had saw [sic]," apparently meaning that they were the only people, other than

---

[13] Although defendant in his brief sets out a harmless-error test applicable to some types of constitutional error, he has not argued that the admission of the "identification" testimony at issue constituted a constitutional error. Neither do we find a basis for concluding that the trial court's violation of MRE 801(d)(1)(C) in admitting the "identification" testimony violated any constitutional right of defendant.

police officers, whom he saw in the area. Officer Dahlinger ordered the men to stop, which they did.

Officer Arrans testified that he took his police dog to the window that was the point of entry into the building. The dog started "tracking" from the window. As noted above, Officer Arrans found some dry gloves and hats along the path followed by the dog. Evidently because of the winter weather, Officer Arrans regarded it as "obvious that they had been discarded there within [a] relatively few minutes." The dog's tracking path came within about three feet of a dumpster. Eventually, the dog stopped tracking at the location where other officers had detained three men, including defendant, and the dog refused to continue tracking away from that spot.

As noted above, Officer McDonald testified that he had seen three males, one of whom was defendant, at the local Dairy Mart store earlier in the evening, at about 3:00 or 3:10 A.M. He saw the three men walk to a counter and make a purchase. Officer McDonald saw "Anderson" being handed a pair of gloves by one of the other two men but could not remember which of the other two—defendant or the other "Sykes"— handed the gloves to him. This testimony tends to link the three men, including defendant, to the gloves found near the location of the breaking and entering.

Officer Arrans also testified that he went to the dumpster and observed "the computer" on top of the garbage inside the dumpster. Officer Arrans also found three different types of footprints in the snow near the dumpster. A laboratory technician, Officer Gerald Luedecking, also testified that he found computer equipment and a crowbar in the dumpster. Three police officers indicated that shoes worn by

defendant and the other two men matched footwear impressions in the snow.

The foregoing provides extremely strong evidence that the three men detained by the police had recently been in the area of the dumpster where the computer equipment was located and that no one else had been. This was also compelling evidence that one or more of these three men had thrown the computer equipment, obtained from the Vine Street building, in the dumpster. Accordingly, there was overwhelming evidence that defendant was with the other two men detained by the police when one or more of them broke and entered the building and removed the computer equipment.[14]

Thus, the "identification" allegedly made by Belanger to Officer McDonald, or the lack of it, actually has little significance to the evidence in this case. The testimony from Barcus, in which she stated that one of the three individuals asked something like "Are you ready?" before the window was broken strongly indicated that at least two of them were planning to commit a breaking and entering. Completely disregarding the testimony with respect to the "identification," it is extremely difficult to believe that defendant simply walked along with the other two men, then stopped and waited while they committed the breaking and entering and larceny and further walked along with them *after* the breaking and entering without having been a participant in the scheme. Thus, we conclude

---

[14] We recognize that there are some minor inconsistencies in accounts provided by the various police officers. For example, Officer McDonald said that he took one shoe from each suspect and compared them with the footprints by the dumpster, while Officer Arrans referred to pairs of shoes being compared with the footprints. However, we do not regard such minor inconsistencies as substantial.

that the improper admission of the "identification" testimony was harmless error because there is no reasonable probability that its admission affected the outcome of defendant's trial. *Sabin, supra* at 540 & n 2; *Hubbard, supra* at 243.

### H. CONCLUSION

We conclude that the testimony of Officer McDonald in McDonald 2 was not testimony by a third-party witness concerning a statement of *identification* by Belanger under MRE 801(d)(1)(C) because it was not a statement that reflected the perceptions of a specific individual. Therefore, it was error for the trial court to allow McDonald's testimony in McDonald 2. However, this error was harmless, as explained above.

### III. SUFFICIENCY OF THE EVIDENCE

Defendant's remaining contention is that the evidence was insufficient to permit a rational trier of fact to find his guilt established beyond a reasonable doubt. *People v Wolfe*, 440 Mich 508, 515; 489 NW2d 748 (1992). We disagree. Even if the testimony regarding defendant's identity had not been admitted, the remaining evidence overwhelmingly showed that defendant was part of a group of three men when one or more of them broke the window at the Vine Street building with a crow bar. They subsequently left the Vine Street building carrying the computer monitor and keyboard, which they hastily deposited in the dumpster along with the crow bar. Moreover, the police tracking dog followed a trail from the scene of the breaking and entering to the park where defendant was apprehended. When this evidence is viewed in a light most favorable to the prosecution, a rational

trier of fact could find that defendant, acting either as a principal or an aider and abettor, broke and entered the Vine Street building and removed property with the intent to deprive the owner of it. MCL 750.110; MSA 28.305; MCL 750.360; MSA 28.592. See *People v Adams*, 202 Mich App 385, 390; 509 NW2d 530 (1993) (elements of breaking and entering are [1] the defendant broke in a building; [2] the defendant entered the building; [3] at the time of the breaking and entering, the defendant intended to commit a larceny or felony therein); *People v Mumford*, 171 Mich App 514, 517-518; 430 NW2d 770 (1988) (elements of larceny in a building are [1] an actual or constructive taking of goods or property; [2] a carrying away or asportation; [3] the carrying away must be with a felonious intent; [4] the goods or property must be the personal property of another; [5] the taking must be without the consent and against the will of the owner; and [6] the taking must occur within the confines of the building).

Affirmed.