# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

ANTHONY MARK COX,

        Defendant-Appellant.

UNPUBLISHED
January 15, 2015

No. 317617
Cass Circuit Court
LC No. 12-010126-FH

Before: RIORDAN, P.J., and MARKEY and WILDER, JJ.

PER CURIAM.

Defendant appeals by right his convictions for breaking and entering a building with the intent to commit a larceny, MCL 750.110; conspiracy to commit breaking and entering a building with the intent to commit a larceny, MCL 750.157a and MCL 750.110; larceny in a building, MCL 750.360; conspiracy to commit larceny in a building, MCL 750.157a and MCL 750.360; and operating a motor vehicle without a license, MCL 257.904(1). We vacate the conspiracy to commit larceny in a building conviction but affirm in all other respects.

On April 21, 2012, Fabian Suarez, an off-duty Michigan State Police detective, went to check on a vacant house his friend, Kenneth Fraser, owned. When Suarez approached the house, he saw defendant's truck backed up to the open attached garage and defendant and two men standing in the garage. At trial, the two other men were identified as Kenny Haines and Ron White. Suarez observed a white stove and scrap metal in the back of the truck. When Suarez approached the men, defendant and an unidentified woman got into the truck and drove away. Suarez spoke briefly with Haines and White, who stated that they lived in Indiana and that defendant offered to buy them some beer if they helped him remove items from the house; however, they denied knowing defendant very well or knowing who owned the house. Suarez was able to identify defendant based on the license plate on the truck, and he and trooper Andrew Steensma arrested defendant at his mother's house two days after the incident. Fraser testified that a white stove, a microwave, copper pipe, electrical wire, and metal were stolen from the home and garage; he estimated the replacement value of these items at $5,000.

Defendant first argues that there was insufficient evidence to convict him of breaking and entering with intent, larceny in a building, and the two conspiracy charges. We review de novo this claim, viewing the evidence in the light most favorable to the prosecution to determine whether a rational trier of fact could find that the essential elements of the crime were proven

-1-

beyond a reasonable doubt. *People v Kanaan*, 278 Mich App 594, 618; 751 NW2d 57 (2008). Circumstantial evidence and reasonable inferences arising from the evidence may constitute satisfactory proof of the elements of a crime. *Id.* at 619. We resolve all conflicts in the evidence in favor of the verdict because the jury determines the credibility of witnesses and the weight accorded to evidence. *Id.*

The elements of breaking and entering with the intent to commit larceny are: "(1) the defendant broke into a building, (2) the defendant entered the building, and (3) at the time of the breaking and entering, the defendant intended to commit a larceny therein." *People v Toole*, 227 Mich App 656, 658; 576 NW2d 441 (1998). The elements of larceny in a building are (1) an actual or constructive taking of goods or property,

(2) movement of the property, (3) the intent to steal or permanently deprive the owner of the property; (4) the taking must be without the consent and against the will of the property's owner; and (6) the taking must occur with in the confines of the building. *People v Cain*, 238 Mich App 95, 119; 605 NW2d 28 (1999); *People v Sykes*, 229 Mich App 254, 278; 582 NW2d 197 (1998). In this case, the jury was instructed that it could convict defendant of breaking and entering with intent and larceny in a building as either a principal or as an aider and abettor. The elements necessary to convict a defendant as an aiding and abetting theory are: "(1) the crime charged was committed by the defendant or some other person; (2) the defendant performed acts or gave encouragement that assisted the commission of the crime; and (3) the defendant intended the commission of the crime or had knowledge that the principal intended its commission at the time that [the defendant] gave aid and encouragement." *People v Robinson*, 475 Mich 1, 6; 715 NW2d 44 (2006).

The evidence at trial established that Suarez observed defendant's truck backed up to Fraser's garage. A panel on the garage door was kicked in. Defendant, Haines, and White were standing inside of the garage. Both Suarez and Fraser confirmed that the garage door had been secure one week previously. Further, Fraser testified that he never gave defendant permission to enter the garage or the home, and there was a sign at the end of the driveway identifying the property as private property. Suarez observed a white stove and metal in the back of defendant's truck, and Fraser confirmed that items valued at $5,000 were stolen from the home and the garage. When Suarez announced that he was a police officer, defendant fled with the stove and metal still in the back of his truck. Defendant also admitted that he intended to take firewood from the property and that he did take a coffee pot from the property. Also, both Suarez and Steensma testified that when they initially questioned defendant about the items taken from the Fraser home, he told them that he returned all of the "stuff" to the Fraser driveway. Viewed in a light most favorable to the prosecution, this evidence was sufficient to permit a rational trier of fact to convict defendant of larceny in a building, and breaking and entering a building with an intent to commit a larceny, either as a principal or as an aider and abettor.

The crime of conspiracy requires proof of "both the intent to combine with others and the intent to accomplish the illegal objective." *People v Mass*, 464 Mich 615, 629; 628 NW2d 540 (2001). It is not necessary that each coconspirator have full knowledge of the extent a criminal conspiracy or that one conspirator know all of the other conspirators or participate in all of the objects of the conspiracy. *People v Hunter*, 466 Mich 1, 7; 643 NW2d 218 (2002). In addition, "direct proof of the conspiracy is not essential; instead, proof may be derived from the

circumstances, acts, and conduct of the parties." *People v Justice*, 454 Mich 334, 347; 562 NW2d 652 (1997). "The gist of the crime of conspiracy is the agreement of the conspirators to commit one or more unlawful acts . . . ." *People v Mezy*, 453 Mich 269, 284; 551 NW2d 389 (1996). Whether there was one conspiracy to commit two crimes, or more than one conspiracy each with a separate object is determined by the "totality of the circumstances." *Id* at 285; *People v Bailey*, 486 Mich 1066; 784 NW2d 46 (2010). In making this determination, factors that courts should consider include, (1) time, (2) persons acting as coconspirators, (3) the charged offenses, (4) the overt acts performed or the nature and scope of the activity prohibited by the charged offenses, and (5) the places where the events alleged as part of the conspiracy took place. *Mezy*, 453 Mich at 285.

In the present case, defendant testified that he had known Haines and White for 10 or 15 years.[1] Further, defendant admitted that because he was in poor health, he enlisted Haines and White to lift heavy items into his truck on April 21, 2012. Defendant also testified that he and his friends all arrived at the Fraser house together in defendant's truck, and when they arrived, Haines and White wanted to "check out" the house and garage, including a water heater in the garage. Although defendant testified that he did not intend to steal anything from the Fraser house (implying that his friends did), he contradicted this when he admitted that he intended to take firewood from the property and actually took a coffee pot that was located outside of the house. In addition, when Suarez identified himself as a police officer, defendant fled from the scene with the stolen property, and he testified that he invited Haines and White to leave with him. Further, when Steensma questioned him about how the items from the Fraser home got into the back of his truck, defendant said, "People talk, one thing led to another, and the appliances ended up being in the back of the truck." Viewed in the light most favorable to the prosecution, we conclude this evidence was sufficient to permit a rational trier of fact to find that defendant and his friends agreed to break into and enter the Fraser home and garage and to commit a larceny in the buildings and that the men had the specific intent to accomplish the illegal activity. *Mass*, 464 Mich at 629. But the evidence only supports a finding that there was a single agreement that resulted in two separate crimes. In other words, the evidence did not support the existence of two agreements, each with a separate objective. The charged misconduct was germane to one course of wrongdoing and one plan with one objective–to steal property from the Fraser home. Therefore, the evidence only supported one count of conspiracy. *Mezy*, 453 Mich at 284-285. Because the crime of larceny in a building could not have occurred without the predicate crime of breaking and entering with intent, and thus there could be no conspiracy to commit larceny in a building without first conspiring to break into, and enter, the building, we vacate defendant's conviction for conspiracy to commit larceny in a building.

Second, defendant argues that the trial court improperly allowed the prosecution to amend the information to add the charges of larceny in a building, conspiracy to commit larceny in a building, and conspiracy to commit breaking and entering a building with intent and that the

---

[1] When defendant was arrested, he initially told Steensma that he barely knew Haines and White, which was consistent with the statements Haines and White made to Suarez at the Fraser property. At trial, however, defendant admitted that this was a lie.

amendment of the information deprived him of his due process rights.[2]  Both of these unpreserved claims of error are reviewed for plain error affecting defendant's substantial rights. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999).  MCL 767.42(1) states in relevant part that "[a]n information shall not be filed against any person for a felony until such person has had a preliminary examination therefore, as provided by law, before an examining magistrate, unless that person waives his statutory right to an examination."  However, MCR 6.112(H) states in relevant part that "[t]he court before, during, or after trial may permit the prosecutor to amend the information unless the proposed amendment would unfairly surprise or prejudice the defendant."  In *People v McGee*, 258 Mich App 683, 686-687, 693; 672 NW2d 191 (2003), this Court held that pursuant to MCR 6.112(H), the trial court had the authority to add a new charge to the information on the first day of trial even though that charge had not been raised at the time the defendant waived her preliminary examination.  The *McGee* Court relied on *People v Goecke*, 457 Mich 442, 458-459, 462; 579 NW2d 868 (1998), which held that after a defendant is properly bound over to the circuit court, that court had jurisdiction, and MCR 6.112(H) permitted the circuit court to amend the information as long as the amendment would not unfairly surprise or prejudice the defendant.  *McGee*, 258 Mich App at 689-690, 696.  The *McGee* Court also held that any error in not providing the defendant a preliminary examination with regard to the new charges, in light of sufficient evidence at trial to convict beyond a reasonable doubt, was harmless error not warranting reversal.  *Id.* at 695-699; MCL 769.26.

In the present case, defendant waived his preliminary examination and was bound over to circuit court on two charges.  At that time, the circuit court acquired jurisdiction over defendant. *Goecke*, 457 Mich at 458-459.  Once the circuit court acquired jurisdiction, pursuant to MCR 6.112(H) the circuit court could permit an amendment to the information unless the proposed amendment would unfairly surprise or prejudice defendant.  *McGee*, 258 Mich App at 689-690, 693.  The amendment to the information did not unfairly surprise defendant because defendant had almost eight months' notice of the new charges before trial.  See *People v Russell*, 266 Mich App 307, 317; 703 NW2d 107 (2005) (holding amending an information more than a month before trial provided the defendant sufficient time to prepare).  Further, defendant fails to even articulate how additional time to prepare would have benefited his defense.  See *McGee*, 258 Mich App at 693.  The trial court did not plainly err when it granted the prosecution's motion to amend the information.  *Id.*; *Russell*, 266 Mich App at 317.  And, defendant's argument regarding the statutory right to a preliminary examination with regard to the new charges is at best harmless error.  *McGee*, 258 Mich App at 697-699.

Further, amending the information did not violate defendant's constitutional right to due process, which generally requires reasonable notice of the charge and the opportunity to be heard.  *McGee*, 258 Mich App at 699.  "Whether an accused is accorded due process depends on

---

[2] Defendant was originally only charged with, and bound over on, charges of breaking and entering a building with intent to commit a larceny and operating a motor vehicle while his license was suspended.  Notably, defendant does not challenge the amendment to the information that changed the charge of operating a motor vehicle with a suspended license to the more favorable charge of operating a motor vehicle without a license.

-4-

the facts of each case." *Id*. at 700. A defendant must prove prejudice to his defense to establish his right to due process was violated. *Id*. In *McGee*, the Court found that the defendant understood the amended charge, did not claim to be unable to defend the added charge, did not request a continuance, and did not claim that her defense might have been different given additional time to prepare. *Id*. at 701. Therefore the defendant's due process claim failed because she failed to established prejudice with regard to the addition of a new charge. *Id*. at 702. Similarly, in the present case, defendant was notified of the addition of the charges eight months before trial began. Further, defendant understood the new charges; indeed, they all arose out of the same events, and defendant did not object to the amendment of the information. In addition, defendant did not claim to be unprepared to try the added charges, did not request a continuance, and did not claim that his defense might have been different had he been given additional time to prepare. Thus, defendant's due process claim fails "because [he] has not established prejudice resulting from inadequate notice and opportunity to defend the charges." *Id*. at 702.

Defendant also argues that his trial counsel was ineffective for failing to object to the amendment of the information. But any objection to the amendment of the information would have been futile, and an attorney is not ineffective for failing to raise a futile objection. *People v Unger*, 278 Mich App 210, 256; 749 NW2d 272 (2008). Defendant cannot establish that his trial counsel's performance fell below an objective standard of reasonableness, so he cannot prevail on his claim of ineffective assistance of trial counsel. *Id.* at 253.

Third, defendant argues that the trial court improperly admitted the statements that Haines and White made to Suarez pursuant to the coconspirator exception to the hearsay rule. "'Hearsay' is a statement, other than the one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." MRE 801(c). Hearsay is generally inadmissible, MRE 802, but a statement is not hearsay if it is "offered against a party and is . . . a statement by a coconspirator of a party during the course and in furtherance of the conspiracy on independent proof of the conspiracy." MRE 801(d)(2)(e). To be admissible under the coconspirator exception to the hearsay rule, the proponent of the statement must show by the preponderance of independent evidence (1) the existence of a conspiracy; (2) the statement was made during the course of the conspiracy, and (3) the statement furthered the conspiracy. *People v Martin*, 271 Mich App 280, 316-317; 721 NW2d 815 (2006).

Here, sufficient evidence independent of Haines' and White's statements was offered at trial to establish a conspiracy to commit breaking and entering with intent and larceny in a building. In addition, the crimes of breaking and entering with intent to commit a larceny and larceny in a building clearly contemplated a financial objective, specifically, selling any items removed from the Fraser property. And, even "after the primary object of the substantive crime is complete, the conspiracy may continue if its objectives contemplated the completion of financial or other arrangements." *People v Bushard*, 444 Mich 384, 394; 508 NW2d 745 (1993). The statements of Haines and White, made minutes after defendant fled the property with the stolen items but before the financial goals of the conspiracy were achieved, were made in the course of the conspiracy. *Id*. at 395. Finally, a statement made in furtherance of a conspiracy need not be made to a coconspirator, and a statement is considered to be in furtherance of a conspiracy if the statement provides reassurance, serves to foster trust and cohesiveness, or informs a coconspirator as to the progress or status of the conspiracy. *Id*. at 395-396. In the

-5-

present case, Haines' and White's statements that they had no substantive information about defendant and did know who owned the house were in furtherance of the conspiracy because delaying the investigation gave defendant time to escape and sell the stolen property. In addition, Suarez spoke to Haines and White simultaneously, so their statements to him could reasonably be construed as indirectly communicating information to each other regarding the conspiracy, including reassuring each other of the continued plan to deny involvement and knowledge of defendant. In sum, the trial court properly admitted Suarez's testimony regarding the statements of Haines and White pursuant to MRE 801(d)(2)(e).

We note that defendant also raises the unpreserved argument that a portion of Haines' and White's statements to Suarez was unfairly prejudicial and therefore not admissible pursuant to MRE 403. But because defendant admits that the jury could have interpreted the challenged testimony in his favor, he has failed to establish that this challenged testimony was unfairly prejudicial. See *People v McGhee*, 268 Mich App 600, 614; 709 NW2d 595 (2005) (evidence is unfairly prejudicial when it relates to matters extraneous to the merits of the lawsuit and may be given too much weight by the jury). Plain error affecting defendant's substantial rights did not occur. *Carines*, 460 Mich at 763.

Finally, defendant argues that there were several instances of prosecutorial misconduct. All of these unpreserved claims of prosecutorial misconduct are reviewed for plain error affecting defendant's substantial rights. *Id*. Defendant first argues that the prosecutor while interrogating witnesses and presenting her arguments improperly elicited irrelevant and highly prejudicial information. The prosecutor obtained testimony from Suarez that defendant did not come to the door for some time after the police officers arrived at his mother's house to arrest him. This testimony was evidence of attempting to evade custody and therefore relevant and admissible to demonstrate consciousness of guilt. *People v Coleman*, 210 Mich App 1, 4; 532 NW2d 885 (1995). Likewise, the testimony the prosecutor elicited from Fraser regarding the value of the property stolen was relevant and admissible to show a motive to commit the crime. *People v Yost*, 278 Mich App 341, 406; 749 NW2d 753 (2008). The prosecutor did not commit misconduct when she referenced this evidence in opening statement and closing argument because she was "free to argue the evidence and all reasonable inferences from the evidence as it relates to [her] theory of the case." *Unger*, 278 Mich App at 236.

Defendant also argues that in her closing argument, the prosecutor improperly suggested facts not in evidence. Contrary to defendant's argument, the prosecutor did not argue that Suarez was "a community policing officer." Instead, she argued that Suarez was a police officer, which testimony supported, and that the *jurors* were members of the community. And, to the extent the prosecutor argued that Suarez was a credible witness because he had no apparent reason to dislike defendant and that he was not looking for extra police work, the prosecutor was properly commenting on the credibility of its own witness on the basis of reasonable inference, *People v Thomas*, 260 Mich App 450; 455; 678 NW2d 631 (2004), and properly appealing to the jurors' common sense, *People v Lawton*, 196 Mich App 341, 355; 492 NW2d 810 (1992). Moreover, the fact that a woman at defendant's mother's house was lying when she told Suarez that defendant was not at the home was also in evidence. While there is no direct evidence that defendant persuaded the woman to lie, this is a reasonable inference from the evidence because she was a known acquaintance of defendant; there was no independent reason given for why the woman would lie to the police, and the evidence permitted an inference that defendant was

-6-

attempting to evade capture. *Coleman*, 210 Mich App at 4. Prosecutors are accorded great latitude to argue the facts and reasonable inferences arising from the evidence. Nor are they limited to presenting their arguments in the blandest possible terms. *Unger*, 278 Mich App at 236, 239. Finally, the prosecution's comments that stolen property is typically never found were properly responsive to the testimony defendant elicited at trial and to defense closing arguments. *People v Dobek*, 274 Mich App 58, 64, 67; 732 NW2d 546 (2007).

Next, defendant argues that the prosecutor improperly asked defendant to vouch for the credibility of Suarez and Steensma because she asked defendant on cross-examination if Suarez and Steensma were lying with regard to several statements. But defendant challenged the credibility of Suarez and Steensma in several respects, and reviewing the prosecution's questions to defendant in context, we believe it is clear that the questions regarding whether Suarez and Steensma were lying were posed in response to these direct challenges to the credibility of Steensma and Suarez. Viewed in context, the prosecutor's statements and questions during Suarez's and Steensma's cross-examinations did not deny defendant a fair trial. *Id*.

Defendant also argues that the prosecution misstated the law regarding conspiracy and aiding and abetting; however, the prosecutor's comments, in context, accurately stated the law. To the extent the comments were mistatements of law, the trial court's instructions rendered any error harmless. *People v Grayer*, 252 Mich App 349, 357-359; 651 NW2d 818 (2002).

Finally, we agree that the prosecutor improperly appealed to the jury's sympathy when, in her closing argument, she invited the jury to "imagine" how Fraser felt when he walked through the home after the crimes. But this isolated comment was not so inflammatory as to prejudice defendant. Further, the trial court instructed the jury not to be influenced by sympathy or prejudice and instructed that the attorneys' arguments were not evidence. These instructions cured any error. *Unger*, 278 Mich App at 235, 237. And, because we have found only minor errors that were cured by the trial court's proper instructions, there is no cumulative effect of multiple, uncured errors that denied defendant a fair trial. *Id*. at 258; 261-262.

We vacate defendant's conspiracy to commit larceny in a building conviction but affirm in all other respects. We do not retain jurisdiction.

/s/ Michael J. Riordan
/s/ Jane E. Markey
/s/ Kurtis T. Wilder